[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON PLAINTIFF'S MOTION TO STRIKE
In this case the plaintiff insurance company brought an action to determine its liability for a fire loss. It claims not to be liable under the policy because one of the named insureds set fire to the building. That individual's name is Scott Biron. The company by letter informed the other insured, Mr. Ciarcia, why it was denying the claim under the policy. The letter set forth the reason for the denial of the claim. It said Mr. Biron was present at the time the fire occurred, had a chance to start it and a motive to do so. The letter spelled out the particular financial reasons which supplied Mr. Biron with the motive. The letter goes on to say that at the Examination Under Oath requested by the insurance company Mr. Biron falsely represented that he told a police officer about the possible involvement of a gang in the setting of the fire because of his cooperation with the police. The letter said the company investigation indicated Biron never gave this information to the police and he never cooperated with them regarding drug investigations. The letter goes on to say the policy permits the company to deny the claim because the fire was incendiary, Biron had a motive and opportunity to start it and thus the law allows an inference Biron was responsible for the fire. The letter also denied the claim on the grounds that Biron misrepresented material facts at his examination. Some five months later an attorney for the company sent Biron a letter advising him of a request for an apparently new examination under oath. The letter appears to be a form letter; it explains what the procedure involves and makes a detailed request for certain documents. This letter makes no specific reference to the facts or circumstances surrounding the loss and certainly no reference to the allegations or facts referred to in the previous letter to Ciarcia.
Based on these two letters Mr. Biron counterclaimed alleging these two letters were false, malicious, and libelous (Count Two). In Count Four the defendant Biron makes a claim under CUTPA.
The plaintiff company now seeks to strike both counts.
1. CT Page 1433
First it should be said that to somehow impute improper motives to the attorney who simply informed Mr. Biron of the request for an examination under oath is a completely unjustified and unwarranted attack on an attorney who was simply exercising rights belonging to his client under the law. Even if the first letter was defamatory or contained false information there is not a hint of a factual allegation in the counterclaim to suggest or explain how or in what way the attorney who wrote the second letter regarding the examination under oath put anything in his letter that was defamatory. To say the letter was defamatory because it must be read "in tandem" with the first letter is as conclusory as it is inexplicable.
Turning to the first letter where specific allegations and inferences were made concerning Biron's conduct, the company claims its actions were authorized under § 38a-988 of the general statutes. In fact it seems to go somewhat further by asserting that the letter was to a co-insured of Biron and as required by law it simply notified him that a claim was being denied. "Had it not done so, it would have been subject to regulatory action for not acting." (Page 3 of plaintiff's brief)
Reading these two arguments or positions together I believe the plaintiff company is raising a defense of conditional privilege to the libel and defamation claim.
The company, as noted, claims it had an obligation under insurance regulations to inform the co-insured that his claim was being denied. Therefore, it is necessary for the law by implication to create a conditional privilege as a defense to a libel accusation based on the contents of a letter informing a statutorily interested party of the reasons for denying a claim. In order to permit the company to inform the co-insured of all the details for the denial of the claim the company relies on Section 38a-988 of the general statutes. That statute in relevant part says
 Sec. 38a-988. Disclosure limitations and conditions.
 An insurance institution . . . shall not disclose any personal or privileged information concerning an individual collected or received in connection with an insurance transaction unless CT Page 1434 the disclosure is:
 (R) Made to a . . . person shown on the records of an insurance institution . . . as having a legal or beneficial interest in a policy of insurance, provided that . . . (2) the information disclosed is limited to that which is reasonably necessary to permit such person to protect its interests in such policy.
The co-insured Ciarcia would certainly seem to be a person with a legal or beneficial interest in the policy. The court can determine this from the pleadings — the complaint and Ciarcia's answer to the complaint. Biron's brief filed in response to the motion to strike in fact concedes as much. But in opposing the motion to strike, Biron claims that the company went beyond the "statutory parameters." The plaintiff should have simply told Ciarcia it was denying the claim based on provisions of the policy without going into the detail and changes contained in the letter. I cannot agree with this position. A person whose claim is denied should fairly be apprised of the basis, including the factual allegations, which have led a company to deny the claim. That will enable the insured to gather the information he or she feels necessary and secure advice as promptly as possible to rebut the insurance company's accusation. If a company has to tailor its claim rejection letters for fear of incurring an exposure in a libel action then the ultimate interests of insured parties aren't protected and the company might face later challenges that the reasons for denying the claim were invented after the fact. The danger of reputations being ruined on a mass scale is not great since a letter like this would only go out to insureds or people with an interest in the policy or its coverage. I suppose gratuitously volunteered information contained in such a letter having no relation to the reason for denial of the claim but merely insulting or scandalous shouldn't fall under the protection of this conditional privilege. But deciding the appropriate parameters of such a letter — given the policies behind § 38a=988 and the obligation to advise an insured why a claim is denied — should probably be a question of law or at least can be handled as a question of law.
At this time, however, I have problems deciding this matter on a motion to strike. Any privilege in this type of situation should not be an absolute privilege but only a conditional one. The counterclaim specifically states that statements made in the CT Page 1435 Ciarcia letter were "false and malicious", it asserts the allegations of misrepresentation were defamatory, etc. As previously stated I believe insurance companies should be protected when they send out letters setting forth the recisions for denying claims to parties identified in subsection (r) of § 38a-988. However, if in a particular case information contained in such a letter is false, and perhaps intentionally and recklessly so, or made with otherwise malicious intent then the company should not be protected by what is in effect a conditional privilege.
These questions are more appropriately decided by means of a motion for summary judgment. I do not have all the necessary facts before me on which the decision as to the law can be or should be based. If the company can establish that the factual assertions on which it based its reasons for denying the claim are true or even perhaps that the company had good reason to believe they were true then perhaps the company should prevail on a motion for summary judgment. The issues raised by the company and the protection it seeks can't be decided on the basis of the record before the court and Mr. Biron should have an opportunity to factually develop the basis of his claim also. The motion to strike the second count is denied.
2.
The plaintiff insurance company seeks to strike Count Four which asserts that it violated CUTPA. The counterclaim asserts the plaintiff company violated the act by "engaging in unfair or deceptive acts or practices in the conduct of its commerce by the various means described in the third count as well as by its wrongful refusal to pay as a general business practice." (Par 10)
The Fourth Count incorporates all the paragraphs of the First Count and alleges a CUTPA violation by reason of the various types of company activity set forth in the First and Third Counts. Taking the First and the Third Count together it is clear at least to the court that the factual allegations contained in those two counts which form the basis of the CUTPA count are allegations under § 38a-816(6) of CUIPA. That subsection of CUIPA requires unfair claim settlement practices committed "with such frequency as to indicate a general business practice." Isolated circumstances of insurer misconduct do not make a claim under § 38a-816(6). Lees v. Middlesex Ins. Co., 229 Conn. 842
(1994). CT Page 1436
Our rules do not require a party to plead evidence but each pleading must contain a plain and concise statement of the material facts on which the pleader relies, PB § 108. The legal sufficiency of any complaint must be able to be tested by the material factual allegations made in the complaint by means of a motion to strike, PB § 153, if such a motion is to have continued viability on our practice. We are not a notice pleadings jurisdiction. The facts alleged in Count Four of the counterclaim do not set forth any cognizable claim under § 38-816(6) of CUIPA.
The court denies the motion to strike the second count but grants it as to the Fourth Count.
Corradino, J.